UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MICHAEL GATTISON,

                                Plaintiff,

                      -against-

CITY OF NEW YORK; Detective NIURCA QUIÑONES, Shield No. 3310; Sergeant STEVEN SMOLARSKY, Shield No. 3621; and JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                              Defendants.
------------------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

15 CV 5150 (FB) (CLP)

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and the laws of the State of New York.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Michael Gattison is a resident of Kings County in the City and State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9. Defendant Detective Niurca Quiñones, Shield No. 3310 ("Quiñones"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Quiñones is sued in her individual and official capacities.

10. Defendant Sergeant Steven Smolarsky, Shield No. 3621 ("Smolarsky"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Smolarsky is sued in his individual and official capacities.

11. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

12. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

13. At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

14. On the evening of November 29, 2012, a woman named L.G. was the victim of a sexual assault inside of an elevator at 335 Sutter Avenue in Brooklyn, New York.

15. L.G. described her assailant as a black man in his late 20's or early 30's,

medium complexion, approximately 5'9" and wearing a red, white and blue sweater.

16. The investigation of the crime was led by defendant Quiñones, who was assigned to the NYPD's Brooklyn Special Victims Squad.

17. Upon information and belief, defendant Smolarsky supervised the work of defendant Quiñones.

18. According to Detective Quiñones, on December 1, 2012, she went to L.G.'s apartment to show her a "set book" of approximately 40 photographs.

19. According to Detective Quiñones, L.G. identified non-party Terry Samuels as the perpetrator of the crime.

20. Both L.G. and Detective Quiñones signed and dated the photograph of Terry Samuels.

21. Upon investigation, Detective Quiñones discovered that Mr. Samuels had been involved in a near-drowning incident approximately two years earlier and, on November 29, 2012, was living in a rehabilitation facility and unable to speak or walk.

22. Detective Quiñones did not prepare a DD5 about her investigation into Terry Samuels.

23. Detective Quiñones did not take any notes regarding the photographic array shown to L.G. on December 1, 2012.

24. Although she prepared approximately thirteen DD5's about the investigative steps she took on December 1, 2012, Detective Quiñones did not prepare one regarding the photographic array.

25. Detective Quiñones did not disclose L.G.'s December 1, 2012 identification of Terry Samuels to anyone until at least January 2014, eleven months later.

26. Detective Quiñones withheld L.G.'s identification of Terry Samuels from the Grand Jury.

27. According to Detective Quiñones, L.G. was shown a second "set book" on December 11, 2012, from which she selected plaintiff.

28. L.G. allegedly signed the photograph of plaintiff, but did not date it.

29. Detective Quiñones did not sign or date the photograph of plaintiff.

30. Although she prepared approximately seven DD5's about the investigative steps she took on December 11, 2012, once again Detective Quiñones did not prepare one regarding the photographic array shown to L.G.

31. Neither did Detective Quiñones refer to this photographic array in her Grand Jury testimony.

32. In fact, the first time Detective Quiñones told anyone about the December 11, 2012 photographic array was in February 2014.

33. According to Detective Quiñones, she conducted another photo array with L.G. on January 10, 2013, in which L.G. also selected plaintiff.

34. Detective Quiñones does not know where the photographs used in the "set books" she presented to L.G. came from.

35. Detective Quiñones did not prepare a contemporaneous DD5 about the January 10, 2013 photographic array.

36. In fact, Detective Quiñones did not prepare any DD5's at all regarding her investigation during January 2013.

37. A DD5 about the January 10, 2013 photographic array was not prepared until January 9, 2014.

38. Following a months-long delay that Detective Quiñones could not adequately explain, Detective Quiñones arrested Mr. Gattison on February 5, 2013.

39. After Detective Quiñones questioned Mr. Gattison over the course of two days and left him overnight in an interrogation room, Mr. Gattison wrote a statement denying the crime.

40. Mr. Gattison was then arraigned on rape and related charges and remanded without bail.

41. Mr. Gattison was sent to Rikers Island and remained there for approximately one year, one month and 26 days, until he was ultimately released on

or about April 1, 2014.

42. A combined *Dunway/Wade/Huntley* hearing was conducted before the Hon. Miriam Cyrulnik in New York State Supreme Court on February 27, 2014, February 28, 2014 and March 17, 2014.

43. At the hearing, Detective Quiñones and L.G. both testified.

44. L.G. and Detective Quiñones offered contradictory testimony regarding the photographic identification procedures.

45. In her testimony at the hearing, L.G. again identified non-party Terry Samuels as the perpetrator and insisted, contrary to Detective Quiñones's narrative, that the photograph of Samuels, the perpetrator, was the *only* photograph she had signed.

46. Contrary to the testimony of Detective Quiñones, L.G. testified that she viewed loose photographs in addition to those compiled in the "set books."

47. Although Detective Quiñones testified that a "set book," entered into evidence at the hearing, was preserved in the same condition as when it was shown to L.G. in December 2012, the court discovered photographs that had been printed later.

48. In an opinion dated April 2, 2014, citing a "myriad of troubling issues regarding the photographic arrays," Justice Cyrulnik held, *inter alia*, that the

photographic arrays and lineup procedures were unduly suggestive and violated Mr. Gattison's due process rights.

49. Speaking of Detective Quiñones, the court found it "inconceivable that a detective with 23 years experience in the New York City Police Department would fail to document an event as significant as a positive identification by a complaining witness."

50. The court continued:

> "Yet, although Detective Quiñones prepared a multitude of DD5's in this case (many of which were drafted on the days of the respective identification procedures), she testified that she generated no such documentation regarding the results of any identifications made by L.G. In addition to the lack of documentation, Detective Quiñones' testimony revealed that she failed to inform the People of the identification in a timely fashion."

51. The police-arranged photographic and lineup identifications of Mr. Gattison were suppressed.

52. The court held an Independent Source hearing on May 8, 2014 and May 12, 2014, and heard further testimony.

53. In its opinion dated May 13, 2014, the court found a "multitude of inconsistencies and shortcomings" in the complaining witness's identification of Mr. Gattison, which, coupled with the "corrupting influence of the unduly suggestive identification procedures," required the suppression of any in-court identification.

-8-

54. The charges were favorably terminated when they were dismissed on August 5, 2014.

55. Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office.

56. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

57. This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

58. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to his reputation.

## FIRST CLAIM
### Deprivation of Federal and State Due Process

59. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60. The defendants used unduly suggestive pretrial procedures against Mr. Gattison.

61.    In using unduly suggestive pretrial procedures against Mr. Gattison, the individual defendants violated plaintiff's Due Process rights as guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section 6 of the New York Constitution.

62.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages alleged herein.

## SECOND CLAIM
### Denial of the Right to a Fair Trial

63.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

64.    The individual defendants withheld material exculpatory evidence from prosecutors, fabricated and altered evidence related to L.G.'s alleged identification of Mr. Gattison and forwarded false evidence to prosecutors in the Kings County District Attorney's office.

65.    In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

66. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### Negligent Hiring/Training/Retention

67. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

68. Defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

69. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

70. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

71. Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

72. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Federal and State Law Malicious Prosecution

73. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

74. Defendants initiated a criminal prosecution of plaintiff for which there was either no probable cause to begin with, or for which probable cause at some point dissipated, yet defendants continued with the prosecution, which was resolved in plaintiff's favor.

75. Defendants committed fraud before the grand jury, and withheld and altered material evidence that was presented to the Grand Jury and was likely to influence its determination.

76. Plaintiff suffered a post-arraignment deprivation of liberty.

77. Accordingly, defendants violated plaintiff's rights under the Fourth Amendment to the United States Constitution and the laws of the State of New York to be free from malicious prosecution.

78. In addition to their individual liability under 42 U.S.C. § 1983, defendant City of New York, as an employer of the individual defendant officers, is also responsible for their wrongdoing under the doctrine of *respondeat superior*.

79. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

### FIFTH CLAIM
### Failure to Intervene

80. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

81. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

82. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

83. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:   January 29, 2016
         New York, New York

HARVIS & FETT LLP

_____
Gabriel Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

*Attorneys for plaintiff*